<pre>
1                    UNITED STATES DISTRICT COURT

2                     DISTRICT OF CONNECTICUT

3
   *  *  *  *  *  *  *  *  *  *  *Criminal Docket No.
4                                *  3:00CR263(JCH)
   UNITED STATES OF AMERICA,     * Bridgeport, Connecticut
5              Plaintiff         *
                                 * December 9, 2002
6           vs.                  * 3:37 o'clock p.m.
                                 *
7  ROBERT JONES,                 *
               Defendant         *
8                                *
   *  *  *  *  *  *  *  *  *  *  *  *
9                          SENTENCING

10        BEFORE THE HONORABLE JANET C. HALL
             UNITED STATES DISTRICT JUDGE
11
   Appearances:
12 For the Government:              BRIAN E. SPEARS, ESQ.
                                    Assistant U.S. Attorney
13                                  915 Lafayette Boulevard
                                    Bridgeport, Connecticut
14
   For the Defendant:              JASON P. GLADSTONE, Esq.
15                                 125 Main Street
                                   Suite 440
16                                 Westport, CT 06880

17
   For the Probation Office:       JOSEPH MONTESSI
18                                 U.S. Probation Officer

19
   Court Reporter:               Thea Finkelstein RMR, CRR, LSR
20                                915 Lafayette Boulevard
                                  Bridgeport, CT 06604
21                                (203) 384-6067

22

23

24 Proceedings recorded by mechanical stenography, transcript

25 produced by computer.
</pre>

1    THE COURT:  Please be seated.  We are here this

2  afternoon in the matter of the United States of America

3  versus Robert Jones, docket No. 3:00CR263.  If I could have

4  appearances, please.

5    MR. SPEARS:  Good afternoon, your Honor.  For the

6  United States, Brian Spears.

7    THE COURT:  Good afternoon.

8    MR. GLADSTONE:  Jason Gladstone for Robert Jones,

9  your Honor.

10    THE COURT:  Good afternoon to both of you.  Just a

11  couple of things before we get started.  I have reviewed,

12  obviously, the presentence report and there were some letters

13  attached to that which I've also obviously read.  There's a

14  letter from the defendant's daughter, who asked me to send

15  along her love to Mr. Jones.

16    THE DEFENDANT:  Thank you.

17    THE COURT:  There is an addendum, although a brief

18  one, as well as a presentence report.  I've also reviewed,

19  there was a sentencing memo filed by Mr. Jones before

20  Attorney Gladstone was in the case, as well as Attorney

21  Gladstone has filed a lengthy memorandum and the government

22  has responded.  I've obviously reviewed all of that as well.

23    And I have gotten a detention status report from

24  the pretrial services office, probation office, and discussed

25  the case with the probation officer.

1    Is there anything else I should have reviewed in

2    preparing for today's sentencing that anybody's aware of that

3    I've overlooked?

4    MR. SPEARS:  No, your Honor.

5    MR. GLADSTONE:  No, your Honor.

6    THE COURT:  There were two letters from Mr. Jones

7    in my file, but I've looked at those previously.  Obviously

8    I'm mindful of those as well.

9    Mr. Jones, I need to be certain before we begin

10   that you had a chance yourself to look at this presentence

11   report and to go over it with counsel and have him answer any

12   questions you might have had about it.

13   THE DEFENDANT:  Yes, I have.

14   THE COURT:  You have?  All right, sir, good.  First

15   thing I need to ask is I need to ask defense counsel,

16   Attorney Gladstone, what issues of fact and issues of law you

17   think there are in connection with the sentencing that the

18   Court needs to address.

19   MR. GLADSTONE:  Okay.  Your Honor, briefly, as

20   stated within my sentencing memorandum, after numerous

21   conferences with Mr. Jones regarding the status of his case,

22   regarding the proceedings of the case up until my

23   representation, it was clear to me that what Mr. Jones was

24   asking me to do and what he was expressing to me that he was

25   dissatisfied with his attorney and felt as though his

1    attorney was ineffective, and after specifically reviewing

2    with him what specifically he thought was ineffective about

3    his representation, I had come to the determination to draft

4    the sentencing memorandum and address the issues that I did.

5         First issue was ineffective assistance of counsel,

6    your Honor.  After discussing it with Mr. Jones and getting

7    up to speed on the case, I felt as though Mr. Jones -- and

8    Mr. Jones was urging me that he felt as though he didn't need

9    to stipulate to the quantity, nor stipulate to the career

10   offender status.

11        He wished that the Court were to make their

12   findings in regular course and certainly didn't -- after

13   reviewing it, I realized that he certainly didn't -- need to

14   do it to get the potential for the three-level reduction for

15   acceptance of responsibility.

16        Furthermore, I believe that --

17        THE COURT:  I don't understand that.  Obviously, it

18   wasn't a part of any negotiations but I can only speculate,

19   I'm sure Attorney Spears will correct me if my speculation is

20   wrong, but I assumed that the plea agreement was the result

21   of lengthy negotiations between defendant's counsel and the

22   government, and that I don't know but I think it likely that

23   the government would not have agreed to enter into a plea

24   agreement without a stipulation.  I suppose the defendant's

25   always free to plead guilty to the charges without such an

1    agreement.

2                MR. GLADSTONE:  Well, I think after discussing it

3    with Mr. Jones, I got the impression, and after giving him my

4    sentencing memorandum, it was my understanding that Mr. Jones

5    felt as though, that he was -- that he -- that his

6    stipulations regarding quantity, stipulations regarding

7    career offender, may have prevented this Court from

8    considering downward departures below 188 months, as

9    stipulated to within the agreement.

10               THE COURT:  Let's just cut to the quick.  I mean,

11   does he wish to withdraw his guilty plea and back out of the

12   plea agreement?

13               MR. GLADSTONE:  No.

14               THE COURT:  Then what issues of fact does he have

15   with the presentence report?

16               MR. GLADSTONE:  I think the issues of fact

17   regarding the presentence report are in regards to potentials

18   for downward departures, basically based on his peripheral

19   involvement, and we believe that the defendant's criminal

20   history overstates his propensity to commit crimes.  These

21   two issues were addressed within the sentencing memorandum.

22               THE COURT:  That's fine, and I will hear from you,

23   obviously you've written a lengthy memorandum on the subject,

24   and I would be happy to hear from you further on the question

25   of departure.

1      What I would first do, as I'm required by law, is

2   to determine the guideline range.  In order to do that, what

3   I particularly do when I come out for sentencing is to ask

4   both sides whether there are any issues of fact -- meaning

5   does the presentence report contain any factual matters which

6   would bear on the guideline calculation determination --

7   which either side disputes.

8      And then, once I've done that, I ask, are there any

9   issues of law?  In other words, are there any guideline

10  applications as proposed by the probation officer, could be

11  role, could be whatever, any kinds of enhancements, even the

12  level determination that, as a matter of law, taking the

13  facts as found by the Court, that was an incorrect

14  calculation under the guidelines.

15     And once I've heard from both sides on both of

16  those issues and resolved the issues, I guess, I then can

17  calculate the guidelines and then I can hear from the parties

18  about departure issues.

19     MR. GLADSTONE:  Okay.

20     THE COURT:  So my question is --

21     MR. GLADSTONE:  Your question is where do we think

22  we stand.  The factual issues that we dispute are the

23  quantities above five grams or more; and the career

24  enhancement as contained within the PSR.  Those are the two

25  big ones.  I know that he has previously stipulated to it but

1    then again, we go back to my original argument of ineffective

2    assistance of counsel and my client's claim regarding that.

3         So obviously, he wants to remain -- he wants to

4    plead guilty but he disputes the factual determinations or

5    any factual determinations regarding quantity and regarding

6    recidivism.  I guess that's where we stand.

7         THE COURT:  All right.  And those obviously have

8    impacts not only on the factual issues as to any stipulation

9    but also then on the guideline calculation.

10        MR. GLADSTONE:  Correct.  I'll weave that whole

11   thing into ineffective assistance of counsel, because I

12   acknowledge that he stipulated to those very items.

13        THE COURT:  All right.  The government?

14        MR. SPEARS:  Thank you.  First of all, the

15   defendant, when he pled guilty, apart from the actual precise

16   stipulation as to quantity, acknowledged under oath that he

17   was involved in five grams or more of crack cocaine.

18        THE COURT:  Correct.  I don't think he's disputing

19   that now.

20        MR. SPEARS:  Correct.

21        THE COURT:  He's only disputing any above five.

22        MR. SPEARS:  That's correct, your Honor.  The

23   reason I start there is beyond that, in view of the

24   application of the career offender guideline, it doesn't

25   matter unless those quantities were going to be 500 grams or

1    more, at which point the level 36 would trump the career

2    offender level 34.

3          THE COURT:  Right.

4          MR. SPEARS:  So the government's position is your

5    Honor does not need to -- first of all, the government's

6    position is the stipulation is binding.  But apart from that,

7    your Honor does not need to even really decide that question

8    because this defendant already acknowledged five grams or

9    more of crack cocaine.

10          THE COURT:  Okay.  And I don't hear him today,

11    Attorney Gladstone, I don't hear you in any way suggesting

12    that the defendant does not admit the five grams.

13          MR. GLADSTONE:  No.

14          THE COURT:  Now, is there anything about the

15    presentence report, as far as the criminal history that Mr.

16    Montessi reported in the presentence report, I didn't hear

17    you taking exception to any of those convictions.

18          I heard you say, I guess you did say, career

19    offender is an issue and I guess I would ask you if you think

20    career offender is an issue that is sort of factually and

21    legally in dispute here, putting aside the stipulation, let's

22    say put that aside, that you feel you can argue he's not a

23    career offender, I guess I would ask you to tell me which of

24    the prior criminal history you think is inaccurate because as

25    I read the prior criminal history, it adds up to career

1    offender under the law.

2            MR. GLADSTONE:  Well, I would object insofar as I

3    object to the enhancement itself and would leave the

4    government to their proof.

5            THE COURT:  You see, that's what I just asked you.

6    In effect, the probation officer has offered to me a report

7    which recites a criminal history.  And unless you can tell

8    me, oh, Mr. Montessi's mistaken, he doesn't have conviction

9    47 or he doesn't have conviction 50 -- paragraphs, I'm

10   referring to, excuse me, paragraph 47 or he doesn't have the

11   conviction in paragraph 50 or he has the one in 50 but it

12   really wasn't what he says it is, it's a different kind of

13   charge, it's not drugs or something that doesn't make him a

14   career offender.

15           Unless you can offer me some other information or

16   dispute the information that's provided to me, I am going

17   to -- and I believe reasonably -- rely upon my probation

18   officer, who's done an investigation and, by the way, I did

19   ask him, in connection with your departure motion, for a

20   printout from the Department of Corrections which at least in

21   material respects as to the key offenses reported in the

22   report which will comprise the career offender status, it

23   indicates movements in and out of the Department of

24   Corrections at the various dates that Mr. Montessi has

25   reported.

1          MR. GLADSTONE:  I think Mr. Jones does not have any

2    evidence to proffer to this Court in regards to the

3    sentencing hearing, but I think it's his assertion, or our

4    assertion, that we don't want to stipulate to it and we

5    think -- and furthermore, it is our assertion that, I think

6    the government has said that, you know, based on

7    preponderance of the evidence, I believe that in a case like

8    this, it certainly should be based on clear and convincing

9    evidence.

10         I know I didn't put that in my memorandum but

11   insofar as -- we object to the entire -- to the two prior

12   sale of narcotics convictions, their validity, and we don't

13   stipulate to quantity enhancements.

14         So both enhancements, we are objecting to although

15   we don't have any specific evidence to proffer and we would

16   leave the Court to their review of the evidence.  And so

17   that's the basis of my whole argument.

18         Mr. Jones does not, does not feel as though he

19   should stipulate to quantity or recidivism enhancements and

20   in doing so, leave the government to their proof on those

21   issues and your Honor, obviously.  So I know I didn't

22   specifically answer your question.

23         THE COURT:  I guess what I'll say is as follows:

24   My understanding, absent any argument from you, my

25   understanding as a matter of law is that if the convictions

1    and sentences reported in the presentence report, if you take

2    them as given, that as a matter of law, that translates to a

3    career offender status.

4              MR. GLADSTONE:  Correct.

5              THE COURT:  As to whether I should accept them as

6    given, I have in front of me a presentence report, which has

7    been disclosed to the parties in graph form and as to which

8    objection could be made.  I had no objections to any of the

9    criminal history.  I have no information in front of me which

10   would contradict the criminal history.

11             I have a printout from the Department of

12   Corrections indicating period of incarcerations, which are

13   consistent with the presentence report, albeit that

14   Department of Corrections report does not tell me the

15   offenses he's convicted of, but based upon the probation

16   officer's investigation as ordered by this Court to be

17   undertaken at the time of sentencing, the Court is going to

18   accept what's in the presentence report absent any evidence

19   to the contrary, or even a suggestion of in what way it's in

20   error.

21             I don't know anybody who's ever challenged a

22   criminal history report without at least some argument that,

23   no, they mischaracterized this offense or no, under New York

24   law, it's different or no, I wasn't convicted of that.

25             So in the absence of that, I'm going to accept as

1   sufficient, even without the stipulation by the defendant, to

2   find the defendant to qualify for career offender treatment.

3          Once having done that, then I think Attorney Spears

4   is absolutely correct, his remark is correct, that then the

5   quantity issue becomes moot.

6          Although I will state that based upon the

7   information in the presentence report, which I presume was

8   provided from review or consultation with the government,

9   paragraph 27 certainly indicates particular sales that would

10  have fallen into the 35 to 50 grams that the defendant was

11  willing to stipulate to at the time he pled guilty.

12         Obviously, his wish is not to be bound by that now,

13  but certainly there's evidence in the report of that and

14  again, I have nothing raising a question about it.

15         Further, the Court would note in there, that

16  paragraph, the officer reports, based on the government's

17  files, large numbers of calls with Anthony Burden during the

18  particular period of time, suggesting transactions with Mr.

19  Burden, Anthony Burden.

20         Do you wish to add anything, Attorney Gladstone?

21         MR. GLADSTONE:  Your Honor, in regards to the

22  criminal history, and how -- I understand the Court's

23  argument but I think our argument extends a step further,

24  too, in that we think that that criminal history or those two

25  narcotics violations overstate his propensity to commit

1  crime.

2          THE COURT:  That's a different issue.

3          MR. GLADSTONE:  I wanted to make the Court aware

4  that I'm going to go there as well.

5          THE COURT:  I'm going to let you go there.  I

6  cannot proceed to that until I make a finding about the

7  guidelines.  I guess legally, I don't have to do it in this

8  order but it's the way I do it and I think it keeps the

9  issues clear.

10          So my view, I'm going to make a guideline finding

11  from which you may then argue that I should depart, which I'm

12  happy to hear from you, and I expect I will on a number of

13  grounds.

14          Absent anything further, then, the Court accepts

15  the presentence report to the extent it sets forth facts

16  which the Court makes its findings of facts for the purposes

17  of findings of facts for purposes of this sentencing

18  proceeding.

19          Based upon those facts, the Court determines,

20  finds, that the base offense level is 30, based upon the

21  facts as I've just found them.

22          That the Court determines that the defendant is a

23  career offender under 4B1.1(a), given that was over the age

24  of 18 at the time of the instant offense was committed; that

25  the charge, current charge, is for a controlled substance

1    offense; that he has two prior felony convictions involving

2    controlled substance, one being disposed of May 4th, '90, and

3    the other June 8th, 1994.

4            He also has another qualifying offense as well,

5    burglary?

6            MR. SPEARS:  Burglary is a qualifying offense as

7    well.

8            THE COURT:  So he has three.  And that would

9    qualify him as a career offender and put him at 34, trumping,

10   in effect, the level 30 base offense level.

11           With respect to acceptance of responsibility, I'm

12   not really sure how to receive the argument of the

13   ineffective assistance of counsel, but I guess I will say

14   that I don't hear anything in the defendant's arguments in

15   that respect.

16           While he might wish to distance himself from

17   certain things in the plea agreement, I don't hear him in any

18   way distancing himself from his admission of guilt, which he

19   did at the change of plea.

20           And given that he did that, and I listened to his

21   allocution at the change of plea and also the fact that he

22   did it in a timely fashion, the sentencing having been

23   continued numerous occasions, it was quite a while ago that

24   Mr. Jones entered a plea of guilty, the Court finds he's

25   entitled to a three-level reduction.  That results in a total

1  offense level of 31.

2          Based upon his criminal history points, are a total

3  of 18, however he's also a career offender so that would make

4  him mandated to be a Category VI in any event.

5          So at criminal history VI, Category VI, and offense

6  31, the range would be 188 to 235 months.

7          Is there any objection to the Court's determination

8  of the guidelines calculation?  Attorney Spears?

9          MR. SPEARS:  No, your Honor.  I do believe -- I'm

10  checking my notes -- that the plea was in front of Magistrate

11  Judge Fitzsimmons.

12          THE COURT:  It was, but I undertook to listen to

13  the tape-recorded CD, in order to hear all of Mr. Jones's

14  change of plea.

15          MR. SPEARS:  Thank you, your Honor.

16          THE COURT:  But you are quite right, it was in

17  front of Judge Fitzsimmons.

18          Attorney Gladstone?

19          MR. GLADSTONE:  No, your Honor.

20          THE COURT:  Let's turn to the issues you do wish to

21  raise, Attorney Gladstone, departure bases.  I have read your

22  memo but I would ask you to start out just to list the bases

23  upon which you will ask me to depart, and then you can

24  address them in whatever order.

25          I assume that you might as well address the whole

1    issue of sentencing in one piece, in other words,

2    departure/sentencing issues, so that if Mr. Jones wishes to

3    address the Court at some time, I'm going to leave that to

4    you as to when you think is the most appropriate time for

5    that, all right?  That is his choice.

6          MR. GLADSTONE:  Thank you, your Honor.  I believe

7    that Mr. Jones's peripheral involvement in the, this case, in

8    the case at hand, warrants a downward departure, and I

9    believe that his criminal history overstates his propensity

10   to commit crimes in that it is -- I'm asking for the Court to

11   depart downward based upon that.

12         I believe if the Court were to look at the

13   defendant's role in the total conspiracy, the number of

14   co-conspirators, the length of time of the conspiracy, the

15   amount of cocaine involved in the conspiracy, the amount of

16   violence and firearms involved with the conspiracy, I think

17   the Court would agree that Mr. Jones's involvement in the

18   total conspiracy is very -- is peripheral, you know, is -- is

19   peripheral.

20         THE COURT:  If I could just interrupt you for a

21   moment.  While I know this is not necessarily determinative

22   of a decision either to perhaps depart on the role issue or,

23   more importantly, to adjust on the guidelines calculation,

24   you think it's fair to say that his role is peripheral as to

25   the quantity for which I gave him, let's say, just even the

1    five grams, his role is peripheral as to that?

2              In other words, sure, there's a heck of a lot more

3    than five or even 50 grams or 500 grams of crack cocaine, or

4    powder cocaine, involved in this alleged conspiracy as

5    charged by the government, but Mr. Jones isn't given

6    responsibility for that.  If he were, he would be facing

7    mandatory life.

8              He's only, right now, his guideline range has been

9    determined based on the quantity -- it's not really because

10   of the career offender, but it's been based on the

11   quantity -- attributable to him only.

12             MR. GLADSTONE:  Well, there have been situations

13   where District Courts have departed downward based on a

14   peripheral involvement.  I'm not saying that his involvement

15   is peripheral in regards to his offense conduct; I'm saying

16   in regards to the total conspiracy, he played a very small

17   part in a very large conspiracy.  And insofar as his

18   involvement in relation to the total conspiracy is concerned,

19   I believe it is peripheral.  And so that would be the basis

20   of my first argument for downward departure.

21             THE COURT:  All right.

22             MR. GLADSTONE:  The second one would be the

23   criminal history overstates his propensity to commit crime,

24   which I had addressed, but specifically --

25             THE COURT:  That's a Mishoe type of argument.

1          MR. GLADSTONE:  Correct.  If I direct the Court to

2     United States v Moore, that defendant even did enter into a

3     plea agreement with the government, if I'm not mistaken, but

4     the Court had granted a downward departure nonetheless based

5     on their belief that the criminal history overstated his

6     propensity to commit crime.  As well as United States v

7     Mishoe and additional cases that I've cited in my memorandum.

8          So those would be the two arguments for downward

9     departures that Mr. Jones would make.

10          THE COURT:  Mishoe had to do with a street seller

11     of small quantities having a "heavy criminal record" because

12     of his repeated arrests because he's the guy on the street

13     selling the packets on a daily basis.

14          Your client's criminal history, and what makes him

15     a career offender, doesn't fit that pattern.  He gets there

16     through sales, he also gets there through burglary and

17     carrying a dangerous weapon.

18          MR. GLADSTONE:  I would submit that the two sales

19     were certainly street-level sales, and that's what I was

20     relying upon in my argument.

21          THE COURT:  Well, but unlike Mishoe, as I recall,

22     the defendant in Mishoe served very little time in prison

23     despite repeated arrests.

24          Your client, I was just going through, but as I

25     calculate it, his first sentence was imposed for jail time

1    served in May of '90 and he served twelve months.  He then

2    got arrested again in September of '91, having been released

3    in May of '91.  He's on the street about four months and he

4    gets -- apparently pleads, I would suspect, given the short

5    time, his change of plea in October, and gets I think about

6    four to five more months.

7            He then is out, that puts him out about February of

8    '92, he's not arrested again but he's arrested less than a

9    year later, January of '93.  In May, he gets seven months,

10   he serves.  Released in August of '93.  He's then arrested

11   again in September of '93, he's released June of '94.

12   Apparently -- I'm sorry, not released June of '94, 9/93,

13   discharged on bond, unsentenced, in November.

14           Doesn't appear to get anything but then picked up

15   November 11th, having been discharged on bond on November 8th

16   of '93; on November 11th of '93, he's arrested for sale of

17   hallucinogenics, narcotics and drugs near a prohibited place,

18   in which he gets 50 months.

19           He gets out on that sentence in August of '98, he's

20   on community and supervised release until November of '99,

21   and I guess he goes two years before he's picked up on the

22   charge but not to say -- every case has to be looked at very

23   carefully and individually, and so I don't mean by my next

24   remark to make a generalization about when a departure's

25   available or not.

1          But my recollection of the cases generally is that

2   Mishoe is perhaps that type of an argument is best suited

3   when you have a very low level street seller who is facing,

4   like Mr. Jones, very high sentence but who previously had not

5   been incarcerated for more than very brief periods of time.

6          So the argument could fairly be made that somebody

7   who's only had four or five months of jail, we don't know

8   that he needs 50 months to be deterred.

9          Here, we have a defendant who has been in jail for

10  a 12-month period, five-month period, seven-month period and

11  a 50-month period.  Over almost the entire '90s, he's been

12  incarcerated or under supervision, and he obviously wasn't

13  deterred.

14         So I guess I would ask how his criminal history

15  overstates his likelihood or propensity to commit crimes.

16         MR. GLADSTONE:  Well, I guess really, the base of

17  that argument is the street sale of narcotics.  I understand

18  in terms of his periods of incarceration were certainly

19  greater than those found in previous cases that warranted

20  departure, but nonetheless, they were for the same type of

21  conduct, and that would be street sale of narcotics.

22         The street sale of narcotics in Connecticut rarely

23  allows a defendant to receive a lenient penalty.

24         THE COURT:  You know, I'm just looking at this.  As

25  I reread the description of the crime reported at paragraph

1   50, it's really very startling.  I don't think I've ever seen

2   a sentence as long as that for what you call street sale in

3   the state court system.

4           Usually, I do have people, like Mishoe, in front of

5   me who are getting repeatedly arrested and it's like a

6   revolving door in state court, they're not getting sentenced

7   to any significant period of time.

8           Unlike those people, Mr. Jones, shall we say, has

9   had the benefit of a significant jail time which nonetheless

10  did not deter him from continuing to deal in drugs.

11          MR. GLADSTONE:  Well, your Honor, insofar as my

12  argument extends to that issue, I would rely on what's in my

13  memorandum and certainly, if the Court is going to make

14  certain findings and obviously is headed that way from what

15  I'm hearing --

16          THE COURT:  If I could just ask the probation

17  officer, in paragraph 51, you do report on the New York one,

18  which obviously I have government's, both counsel's, argument

19  about which I think are in agreement, ought to sentence

20  concurrently or to credit that time already served in New

21  York.  I don't have a problem with that.

22          But I do see that you had asked for more

23  information, Mr. Montessi.  Did you ever receive any of that?

24          MR. MONTESSI:  I never received anything from the

25  court, your Honor, or the police department.

1    THE COURT:  We don't know what kind of drugs it was

2  then?

3    MR. MONTESSI:  That's correct, your Honor.  That's

4  specifically what my question was.  It doesn't surprise me

5  that I did not receive that information.

6    THE COURT:  The government seemed to agree that it

7  was part of this conspiracy that he faces here in this court.

8  Did you know the type of drug?

9    MR. SPEARS:  I understood it to actually be powder

10  cocaine, not crack cocaine, and I'm going from Mr.

11  Gladstone's cite of the statute which, as I recall, involves

12  several ounces of powder cocaine, it was an offense in

13  connection with that.  Other than that, I have no

14  information.

15    THE COURT:  Which, of course, if that's part of

16  this conspiracy, that should be added to the quantity.

17    MR. SPEARS:  Yes, your Honor.

18    THE COURT:  All right.  I'm sorry, I may have

19  interrupted you, Mr. Gladstone, to ask the question I had

20  about paragraph 51.

21    Please continue.  I'm sorry if I interrupted you.

22    MR. GLADSTONE:  Oh, in regards to the concurrent

23  sentence, your Honor, I believe Mr. Jones, in the interests

24  of justice, deserves credit so that his total effect of

25  sentence should be reduced from -- I don't have the actual,

1    what did I say, 21 months if we were sentenced today?

2            THE COURT:  I thought it was 15.

3            MR. GLADSTONE:  No, 21 months would be from March

4    10th, 2001, until December 9th, 2002, which I calculated out

5    to be 21.

6            MR. MONTESSI:  I believe that's correct, your

7    Honor.  I believe 15 would have been the amount of time if we

8    had sentenced -- if your Honor had sentenced Mr. Jones

9    previously.

10            THE COURT:  Sorry, it's probably a note from back

11    when I first got the presentence report.

12            MR. MONTESSI:  I believe so, your Honor.

13            THE COURT:  That's fine.  Okay.  Yes, I looked at

14    that and your memo, Attorney Gladstone.  I didn't have any

15    difficulty and obviously, the government's in agreement so I

16    don't think we should address that issue.  Obviously, he

17    should get credit for that time.

18            MR. GLADSTONE:  I have no further arguments.

19            THE COURT:  I don't know whether Mr. Jones would

20    like to address the Court.  It's your right, Mr. Jones, you

21    don't have to but it's your right to do so.

22            THE DEFENDANT:  No.

23            MR. GLADSTONE:  Could I have just one moment?

24            THE COURT:  Sure.  I thought I heard him say no,

25    but you go ahead and confer, sir.

```
 1              (Attorney Gladstone conferring with the defendant.)

 2              MR. GLADSTONE:  He does wish to make a statement.

 3              THE COURT:  All right, sir.  Just give me a second,

 4   please.

 5              (Mr. Gladstone conferring with the defendant.)

 6              THE COURT:  Go ahead, sir.

 7              THE DEFENDANT:  First of all, I would like to

 8   apologize to the Court for giving you the judgment today, I'm

 9   sure you don't like to make but it's your job; to my fiance,

10   for her standing next to me through all this, sorry.

11              But my -- it's wrong.

12              THE COURT:  Take your time, it's all right.

13              THE DEFENDANT:  I wrote you a letter earlier, you

14   know, in case this happen, that, you know, I wrote it in the

15   letter.

16              But I don't know, I don't, you know, even though I

17   did been arrested a lot of times but I think I was, you know,

18   I know I was doing good as far as, you know, coming home the

19   last time.  I got caught up back in addiction and I made the

20   wrong choices.  I admit that, too.

21              But as far as, you know, I don't know, 15, 19 years

22   for something that I wasn't really involved in, sounds like a

23   bit much.  But that's your judgment.  I hope you look at the

24   case fully and judge me fairly.  Thanks.

25              THE COURT:  All right, sir.  Thank you.
```

 1          Does the government wish to address the arguments

 2    of the defendant, particularly on the departure issue at this

 3    point?

 4          MR. SPEARS:  Yes, your Honor, briefly.  With

 5    respect to the defendant's role in the offense, which is one

 6    claim, the government would submit it's not really a basis

 7    for a downward departure.  It may fit, somehow, somewhere

 8    into the Mishoe analysis, so why don't I just get to that.

 9          Within that analysis, I think your Honor should

10    look to somewhat the nature of the defendant's offense

11    conduct and the level at which he was participating in the

12    offense, and it's in this regard that I would say the only

13    common denominator between this defendant's case and sort of

14    dicta in the Mishoe case would be the fact that he was, in

15    essence, a street level dealer.  That much is true.  But what

16    is also true is the length of his history with street level

17    sales.

18          But more than that, what really distinguishes this

19    case from the contemplation in Mishoe for the downward

20    departure is the defendant's involvement in violent crime in

21    addition to his drug trafficking.

22          Your Honor's aware, he has two assault convictions,

23    and the guidelines say appropriately treat the burglary of a

24    dwelling as a violent crime as well.  In this case, the

25    defendant essentially entered, without authorization, a

26

1    residence dwelling with firearms and a child in the house.

2    He put the gun under the couch on which the child was

3    sleeping before he was eventually apprehended.   That does

4    have the hallmarks of a violent crime, as the guidelines

5    appropriately recognize.

6           But in addition to that, there's more, too, because

7    this defendant, as your Honor's already addressed, has had

8    escalating periods of incarceration from the 12-month

9    sentences that your Honor mentioned to what ultimately was in

10   the neighborhood of four to five years so that this defendant

11   was largely incarcerated throughout the 1990s and yet

12   unfortunately, was unable to conform his conduct to the law,

13   having served all of that time in jail.

14          So this defendant strikes the government as a

15   classic career offender and he should be treated accordingly.

16   The guideline range, the government submits, is an

17   appropriate one.

18          On the concurrent sentence, there is agreement on

19   that.   We've put that forth in our sentencing memorandum as

20   well.

21          Unless there are any questions, the government has

22   nothing further.

23          THE COURT:   All right.   Thank you.

24          Am I correct, Attorney Spears, I made a comment

25   previously but am I correct, that the career offender --

1    first of all, Mr. Jones would be in Category VI, in effect,

2    on his own, without the operation of the career offender

3    provision?

4              MR. SPEARS:  That's correct, your Honor.

5              THE COURT:  And would his assault and the burglary

6    charges, one of those wouldn't count because of the age of it

7    or would it count, would those alone, in other words, if you

8    wiped out his narcotics convictions, would he still be a

9    career offender?

10             MR. SPEARS:  No, your Honor, because the assault

11   convictions involved a sentence of three years that was

12   suspended.  And so therefore, as I read 4A1.2 -- I'm sorry,

13   4A1.2 -- the sentence, for example, the sale conviction in

14   1989, because it's more than a year and a month, it goes back

15   15 years as opposed to ten but the assault convictions didn't

16   carry with them that, a sentence of that duration and

17   therefore, they're not subject to that 15-year rule.

18             So the government would submit that those two are

19   not countable for career offender purposes.

20             THE COURT:  Two, meaning paragraph 44 and 45, the

21   conspiracy to commit assault and the assault two?

22             MR. SPEARS:  That's correct, your Honor.

23             THE COURT:  But the burglary would?  Paragraph 47?

24             MR. SPEARS:  Yes, your Honor.

25             THE COURT:  And then the two drug convictions?

```
 1              MR. SPEARS:  Yes, your Honor.
 2              THE COURT:  All right.  I'm reminded of something
 3     that I had wrestled with before I came out on the bench.  I
 4     don't think, paragraph 89 conviction, he didn't serve the 42
 5     months; he only served 12 months and a few days, and I
 6     thought, therefore, it didn't qualify because it's beyond the
 7     ten years and not sufficient time.  Am I wrong about that?
 8              MR. SPEARS:  My understanding is it's not the
 9     amount of time spent in jail but the actual sentence.
10              THE COURT:  The sentence imposed.  So the 42
11     triggers it.
12              MR. SPEARS:  That's correct.  Whereas in 44 and 45,
13     the sentence was suspended and therefore, would not be
14     treated as a countable sentence.
15              THE COURT:  All right, thank you.  Let me take up
16     the defendant's motion for departure, as I understand it,
17     based upon an argument, what I'll call under Mishoe, that
18     criminal history or his career offender status overstates his
19     propensity to commit further crimes and that I ought to
20     depart on that ground.
21              And that further, a departure would be appropriate
22     because of his peripheral involvement with the overall
23     conspiracy as alleged by the government involving the Burden
24     organization.
25              Taking up the first one, obviously, under the
```

 1    guideline 4A1.3, recognizes that there may be cases where the

 2    Court concludes a defendant's criminal history category

 3    significantly overrepresents the seriousness of a defendant's

 4    criminal history or the likelihood the defendant will commit

 5    further crimes.

 6              And in those circumstances, if I find the criminal

 7    history is significantly less than that of most defendants in

 8    the same criminal history category, I can consider a

 9    departure.

10              In the United States versus Rivers, the Second

11    Circuit in 1995 held that the policy statement under 4A1.3

12    authorizes me to exercise my discretion whenever I conclude

13    the consequences of the mathematical prior history

14    calculation over- or underrepresents the seriousness of the

15    defendant's record.

16              And further, Rivers first introduced the concept

17    that in a case where a defendant whose offense level is

18    raised by his criminal history into career offender status,

19    such discretion may be exercised to the extent thought

20    appropriate to reduce either criminal history category, the

21    offense level or both.

22              More recently, as Attorney Gladstone aptly cited

23    to, the Second Circuit, United States versus Mishoe has held

24    that a district court may, in a case where a defendant

25    qualifies, as Mr. Jones does, as a career offender, well, due

1    to prior narcotics convictions, "make a departure based on an

2    individualized consideration of factors relevant to an

3    assessment of whether criminal history Category VI

4    significantly overrepresents the seriousness of the

5    defendant's criminal history or the likelihood the defendant

6    will commit further crimes."

7          Among the factors the Mishoe case instructed me to

8    consider, by way of example, were the amount of drugs

9    involved in the prior offenses, the defendant's role in those

10    offenses, the sentences previously imposed, the amount of

11    time previously served compared to the sentencing range

12    called for by placement in criminal history Category VI.

13          As the Mishoe case pointed out, a major reason for

14    imposing an especially long sentence, as is clearly the way

15    to describe the one faced by the defendant here today, that

16    the major reason for doing that is to achieve a deterrent

17    effect that the prior punishments failed to achieve, and that

18    reason requires an appropriate relationship between the

19    sentence for the current offense and the sentences,

20    particularly the time served for the prior offenses.

21          Therefore, the Second Circuit authorized district

22    courts to include in its individualized consideration of a

23    departure under 4A1.3 the relationship between the punishment

24    prescribed by a career offender criminal history category and

25    the degree of punishment imposed for prior offenses.

1        In some circumstances, the Mishoe case stated a

2   large disparity in that relationship might indicate that the

3   career offender sentence provides a deterrent effect well in

4   excess of what is required in light of the prior sentences,

5   and time served thereon to constitute a mitigating

6   circumstance under the guidelines.

7        As I've commented, the defendant, Mr. Jones,

8   qualifies on his own criminal history without the use of the

9   career offender category or categorization for criminal

10  history Category VI.  He has 18 criminal history points, all

11  of them attributable to convictions, as I recall, which puts

12  him well above the base required to qualify for criminal

13  history VI.  So the Court would be very hard-pressed to

14  conclude that his criminal history is overstated by being in

15  Category VI.

16       His convictions are for not minor offenses.  They

17  involve risk of harm to persons, as pointed out, categorized

18  as violent, involved repeated drug sales or possession.

19       Further, with respect to his categorization as a

20  career offender, while I appreciate Mr. Jones may not view

21  himself as a major drug kingpin or a person who has been

22  involved in large, individual large, levels of drug dealings,

23  nonetheless, Congress has chosen to categorize someone who is

24  convicted of at least two narcotics convictions as a "career

25  offender," and to impose on them significantly long period of

 1    incarceration.

 2         In this instance, the defendant has two such

 3    narcotics convictions which would qualify him on his own.  He

 4    also has a third conviction, burglary three and dangerous

 5    weapon carrying, which is, in effect, if there had only been

 6    one narcotics conviction, those two would have been

 7    sufficient to categorize it.

 8         All of that is by way of saying he doesn't fall

 9    into a criminal history VI or career offender status --

10    looking for the right word -- let me put it this way:  He

11    falls rather solidly into those categorizations.

12         That doesn't answer, though, the question that

13    Attorney Gladstone urges upon me, and that is a consideration

14    of whether I should exercise the discretion which I have to

15    depart if I find that, nonetheless, the career -- criminal

16    history as well as the elevation to level 34, which the

17    career offender status dictates, puts him at a sentence that

18    is so out of proportion to his role in the prior offenses

19    he's convicted on that earned him that status and the

20    sentences he received for those prior convictions, such as to

21    make the sentence that the guidelines call for way out of

22    proportion in terms of its deterrent effect to what he has

23    faced in the past.

24         I believe I've already put on the record a brief

25    summary of his periods of incarceration, which, as I said,

1    starting at the age of 18, he served a 12-month sentence for

2    narcotics conviction; at the age of 20, shortly after being

3    discharged, he was again arrested and given a two-year

4    sentence but he served only four to five months of that;

5    shortly after being discharged from that sentence, he was

6    arrested again on drug paraphernalia and served total of

7    seven months while the sentence says three months, he was in

8    custody pending sentencing, I believe; upon release from

9    that, shortly thereafter, he was again charged with

10   possession of narcotics, that was an unconditional discharge,

11   there's no sentence for that.

12          But within a couple of months of being arrested on

13   that narcotics possession, and while under those charges, he

14   was arrested again for sale of narcotics and sentenced in

15   June of '94 to 54 months, 50 of which he served,

16   approximately.

17          He then was discharged and for approximately a year

18   to two, undetained by the Department of Corrections until his

19   arrest in New York in March of '01.  So he was approximately

20   uncharged with any offense for approximately 15 to 16 months

21   at the end of 1999 through early 2001.

22          What the Court gathers or takes from that summary

23   is that while the factors that the Mishoe court suggests that

24   I should consider, among others, perhaps the amount of drugs

25   in his prior offenses was not large and his role there, I

1    don't hear the government disputing that he was a street

2    seller, nonetheless, he has met with law enforcement and

3    correctional facilities and received sentences throughout the

4    '90s which are not in ever increasing length but nonetheless

5    reflect increasing levels of imprisonment going from 42

6    months and serving 12 plus to, as I say, a four- to five-

7    month sentence, seven-month sentence, and 50-month sentence,

8    which the 50-month sentence I view as a very significant

9    sentence, which I would have thought would have deterred the

10   defendant from further commission of narcotics offenses,

11   having served a sentence of that length.

12         And while there is quite a difference between four

13   plus years and 15 plus years, nonetheless, the four plus

14   years is a significant sentence which obviously did not deter

15   the defendant.

16         Based upon the defendant's criminal history as I've

17   reviewed it, as I've familiarized myself with it in

18   preparation for today's sentencing, the Court concludes that

19   while I have discretion under Mishoe to depart, that the

20   Court will not exercise its discretion to depart.

21         The defendant seems, by shorter sentences in the

22   past, to be undeterred from continued involvement with the

23   sale of drugs and that criminal history category of VI is an

24   appropriate reflection of his likelihood of commission of

25   further crimes as well as an accurate description of his

1    criminal history and that, as to placing him in a criminal

2    history category 34, because of the criminal -- the career

3    offender status determination, the Court does not --

4    determines not to depart, not to exercise my discretion to

5    depart because again, in light of my considerations of his

6    criminal history and his involvement, have determined it's

7    not appropriate to do so.

8         The second basis for departure has to do with

9    Attorney Gladstone's argument that Mr. Jones was a peripheral

10   player, he had a peripheral involvement in this conspiracy.

11        I'm not sure how to address that because role in

12   the offense is a consideration that the guidelines have taken

13   into account, but I do believe that there might be

14   circumstances in which someone's role in an offense is such

15   that you could conclude that the guidelines do not take into

16   consideration to the kind or degree that would be presented

17   by that individual.

18        However, in this instance, I have before me in the

19   presentence report numerous dealings with persons involved in

20   the conspiracy, as well as several transactions in a short

21   period of time and that clearly, he was not, at least as the

22   conspiracy is alleged, a kingpin or a leader, but he hasn't

23   received credit for that under the guidelines calculation.

24        With respect to the quantity to which he pled, he's

25   admitted responsibility for the five grams, there's no

1  question about the five grams, and as to that, he is,

2  himself, responsible in the sense that he was involved in the

3  sale of at least that quantity, as I understand in the

4  stipulation.

5       So the Court does not consider -- while the Court

6  recognizes there may be circumstances under which I could

7  depart for this argument, the Court does not find those

8  circumstances present here and finds that the issues

9  concerning Mr. Jones's role are taken care of in the

10  guideline calculation, or can be taken care of, could be

11  taken care of, under the guidelines.

12       Give me just a moment.

13       Therefore, the sentencing guideline range is 188 to

14  235 months.

15       Mr. Jones, I would ask if you would please rise,

16  sir, so I may impose sentence upon you.

17       It is the sentence of this Court to impose upon you

18  a term of incarceration of 188 months.  The Court finds that

19  given that the guideline range calls for more than a 24-month

20  spread, it is the finding of the Court that that sentence is

21  more than adequate to serve the purposes of sentencing under

22  the statute and that no further amount beyond 188 months is

23  needed to serve any of the goals of sentencing.

24       Further, the Court determines that the defendant

25  has already served 21 months of his New York State sentence,

1    which the Court finds that sentence and conviction is a

2    result of conduct that is covered by the relevant conduct in

3    the offense before this Court and therefore, the Court would

4    impose a sentence, the remaining term of the sentence imposed

5    by the Court of 164 months upon the defendant, which term the

6    Court would order to run concurrent with the remainder of the

7    defendant's sentence.  I'm not sure if it's with the

8    remainder, I'm not sure that's the correct way to say it

9    because he may be released earlier in New York but the

10   remainder of his sentence is 164 months, and the Court orders

11   it to run concurrent to his New York sentence, period.  So

12   there's no confusion on that.

13          The Court further imposes a supervised release

14   period upon release or discharge from his federal sentence of

15   five years.

16          The Court finds the defendant has no ability to pay

17   a fine and no fine will be imposed.  The Court does impose

18   the special assessment as required by law of $100.

19          With respect to the period of incarceration, the

20   Court -- I'm sorry, with respect to the period of supervised

21   release, in addition to the standard conditions of supervised

22   release, with the exception of third-party victim

23   notification, which the Court does not find applies here, the

24   Court imposes the following special conditions:

25          First, that the defendant shall participate in a

1    program for substance abuse treatment, either in- or

2    outpatient, to include random testing as directed by the

3    probation officer.  The defendant will pay a portion of, all

4    or some of the costs associated with that treatment as

5    determined that he's able to by the U.S. Probation Office.

6         And second, the defendant shall participate in a

7    mental health treatment program, either in- or outpatient, as

8    determined appropriate and necessary by the U.S. Probation

9    Office.  Again, the defendant would pay all or a portion of

10   the costs associated with that treatment as determined by the

11   probation office he is able to do.

12        I'm just trying to -- give me just one more

13   moment.  Before I formally impose the sentence, is there

14   anything that needs to be corrected or added to or

15   supplemented?  Attorney Spears?

16        MR. SPEARS:  No.  The only comment is when your

17   Honor put on the record the total 18 criminal history points,

18   I believe it's 15 in view -- the presentence report

19   calculates 18 but I believe that's adding the three for the

20   New York offense, which is actually subsumed in the offense

21   conduct.

22        THE COURT:  You are absolutely correct.  I made the

23   mistake because I happened to look there and had a sticker

24   there earlier but I don't know what happened to the sticker,

25   but I believe it's correct, it's 15 points which, my

1   conclusion that I drew from that, he's well-placed within the

2   criminal history VI on his own history, is still correct,

3   given 13 as the base.  But thank you for that correction.

4   That was my mistake.

5          Attorney Gladstone, is there anything you would

6   request as far as location or programs or anything that I

7   have not placed in the sentence before I formally impose it?

8          MR. GLADSTONE:  Yes, your Honor.  I would request

9   that the Court recommends placement within the tri-state

10  area.

11         THE COURT:  All right.  Usually I say as close as

12  possible to Connecticut -- to Bridgeport?  I guess that's

13  probably the tri-state area, if they can accommodate him.

14         MR. GLADSTONE:  And that would be all.

15         THE COURT:  Thank you.

16         MR. GLADSTONE:  As far as the criminal history, the

17  18, I think I addressed that in my memo.

18         THE COURT:  You did.  I should have corrected that

19  in the presentence report and it should be amended to reflect

20  that those three points are not counted in the criminal

21  history because, as I say, my finding under 5G1.3 is that

22  conviction is really a conviction for what relevant conduct

23  is in this case.  I should have made that clear when I

24  adopted the presentence report.

25         Does the defendant request drug treatment?  I don't

1  know if he will qualify.  If he did, it would be to his

2  advantage.

3       MR. GLADSTONE:  He has requested that I make a

4  request to the Court for outpatient drug treatment.

5       THE COURT:  I've done that for when he's on

6  supervised release, he will have that.

7       MR. GLADSTONE:  Yes, insofar as while he's

8  incarcerated, drug treatment would be necessary.

9       THE COURT:  The Court recommends to the Bureau of

10  Prisons that Mr. Jones be afforded the opportunity to

11  participate in the 500-hour drug treatment program, which

12  obviously if he can complete it, it may yield some benefit to

13  him on sentence.  I'm not making any representation or

14  assuming that.  I guess it's very hard to complete.

15       It may be, with his prior criminal history, he

16  won't be able to qualify for the benefits, if he completes

17  it.  Other than the benefit of completing it, hopefully

18  having the tools to resist drug use when he's discharged,

19  which I think would be very important to him, whatever he can

20  do while incarcerated.

21       I know, Mr. Jones, it's a very long sentence but

22  you will still have a good part of your life left when you

23  come out and obviously, anything you can do to help yourself

24  get out and live a good life, and one in which you hopefully

25  are supported by people, have your daughter also to care for,

1    would be good.

2            First, let me formally impose the sentence as I've

3    articulated with the various additions I added a moment ago.

4            I also need to advise you, Mr. Jones, in your plea

5    agreement, you did surrender the right to appeal if the

6    sentence was less than 235 months, I believe.

7            Those agreements are usually enforceable but if,

8    for some reason, you feel that that agreement is not

9    enforceable, obviously the sentence is less than 235 months,

10   so under that agreement, you wouldn't have any right to

11   appeal but if you think for some reason that agreement is not

12   enforceable, then you could ask the Court of Appeals to

13   consider your argument about how it's not an enforceable

14   agreement and then, in turn, if they agreed with you on that,

15   then to argue that I've done something wrong in the sentence

16   that I've just imposed.

17           Obviously, you have counsel who I assume will talk

18   to you about appealing but even if Attorney Gladstone wasn't

19   going to help you, like when he left the court today, he

20   said, good-bye, I don't want to have anything to do with you,

21   you could file a notice of appeal yourself.  It's just a

22   simple piece of paper, just say "I appeal," file it with the

23   clerk's office.  There is a fee but if you can't pay it, you

24   tell them that.  The clerk will take it and waive the fee.

25           However, if you do want to appeal, you have to do

1    it within the next ten days.  If you don't do it in ten days,

2    then you do lose it and you can't ever get it back.  It's

3    lost forever if you don't appeal in those ten days.

4         I want to be sure you understand if you do want to

5    try to appeal, and try to argue that you haven't given up the

6    right to appeal, that you have to do that.  You have to file

7    something with the clerk within ten days.

8         Do you understand that, Mr. Jones?  I'm sorry, sir,

9    I was distracted, I don't know if the reporter got on the

10   record if you answered my question whether you understood

11   about the ten days.

12        THE DEFENDANT:  Yes, I do.

13        THE COURT:  Thank you, Mr. Jones.

14        I think at this time, the government needs to

15   dismiss counts?

16        MR. SPEARS:  Yes, your Honor.  At this time, the

17   government would move to dismiss Count Twelve in the third

18   superceding indictment and Count One in the first and second

19   superceding indictments, as against this defendant only.

20        THE COURT:  Are you confident that's all the

21   counts?

22        MR. SPEARS:  Yes, your Honor.

23        THE COURT:  Then the Court grants the government's

24   oral motion to dismiss those counts remaining pending against

25   the defendant.  I think that should complete the proceeding

```
1    for today.

2            Is there anything further, Attorney Spears?

3            MR. SPEARS:  Nothing further, your Honor, thank

4    you.

5            THE COURT:  All right.

6            (Mr. Gladstone conferring with the defendant.)

7            THE COURT:  Attorney Gladstone, anything further?

8            MR. GLADSTONE:  No, nothing further, your Honor.

9            THE COURT:  All right.  Stand adjourned.

10           (4:40 o'clock p.m.)

11

12

13

14       COURT REPORTER'S TRANSCRIPT CERTIFICATE

15

16           I hereby certify that the within

17       and foregoing is a true and correct transcript

18       taken from the proceedings in the above-entitled

19       matter.

20

21

22                    _____

23                        Official Court Reporter

24   Dated:  _____

25
```